**March 30, 2016**

# In the Court of Appeals of Georgia

A15A1802. IN THE INTEREST OF THE ESTATE OF JOE
LEONARD, JR.

MCFADDEN, Judge.

In this negligence action, Joe Leonard, Jr. sued Melvin Cecil Cooper and
Whitfield County, Georgia ("the County") to recover for the injuries he sustained
while being transported in a bus driven by Cooper and operated by the County.
During the course of the litigation, Leonard passed away and Janice L. Croy,
Leonard's daughter and the executor of his estate, was substituted as party plaintiff.
(Leonard and the Estate are collectively referred to herein as "Leonard.") The trial
court granted summary judgment in favor of the County based upon Leonard's failure
to provide timely ante litem notice in accordance with OCGA § 36-11-1.[1] In his

---

[1] In a prior order, the trial court granted summary judgment to Cooper based
upon his immunity as a County employee. That order is not at issue in this appeal.

appeal, Leonard argued that the trial court erred in granting summary judgment for two reasons: because he substantially complied with the statutory requirement regarding the time for presentation of claims and, alternatively, because the time period for the requisite notice was tolled by Leonard's incapacity. Neither argument has merit. Accordingly, we affirm the trial court's ruling that the County was entitled to summary judgment because the ante litem notice was untimely.

1. *Facts and procedural posture.*

> On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.

*Warnell v. Unified Govt. of Athens-Clarke County*, 328 Ga. App. 903 (763 SE2d 284) (2014) (citation omitted).

So viewed, the evidence shows that on January 30, 2012, Joe Leonard, Jr., then 82 years old, was being transported in a bus driven by Cooper and operated by the County. Leonard used a motorized wheelchair and was traveling with an attendant. Once Leonard boarded the bus, Cooper assisted him in securing his wheelchair using straps designed for that purpose. Leonard alleged in the lawsuit that Cooper rounded

2

a curve at a high rate of speed, causing the security straps to detach and his wheelchair to overturn. Leonard was thrown to the floor and sustained two broken legs, which required surgery. Shortly thereafter and allegedly as a result of the injury, Leonard was permanently confined to a managed-care facility.

On June 5, 2012, Leonard's counsel sent an ante litem notice letter to the County Attorney for Whitfield County, Robert A. Smalley, III, at the address of Smalley's law office. Leonard filed suit on January 21, 2014. Thereafter, Cooper and the County filed an answer in which they asserted that Leonard failed to give a timely and/or adequate ante litem notice as required by OCGA § 36-11-1 ("All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred, provided that minors or other persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims.").

Following discovery, the County first moved for summary judgment on the grounds that the ante litem notice failed to substantially comply with OCGA § 36-11-1 because Leonard failed to serve it on an agent authorized to accept service on the County's behalf. See generally *Coweta County v. Cooper*, 318 Ga. App. 41, 43 (733 SE2d 348) (2012) (presentation of notice under OCGA § 36-11-1 generally is

sufficient when given to an in-house county attorney or any department or official of a county; it is not sufficient, however, when given to outside legal counsel who has not been authorized by the county to accept notice on the county's behalf). The trial court found that a factual issue remained on this issue and denied the motion. After the trial court denied the County's first motion for summary judgment, counsel for Leonard personally served the complaint on several County commissioners.

The County then filed a second motion for summary judgment, along with an affidavit from Smalley, in which he averred that, "[a]t all material times, the Whitfield . . . County Board [of] Comissioners ha[d] taken no formal action to authorize [him] to accept ante litem notices on behalf of Whitfield County, Georgia." The trial court granted this second motion, holding that service to Smalley did not substantially comply with OCGA § 36-11-1. The trial court rejected Leonard's alternative argument alleging that a mental incapacity tolled the 12-month period for filing the ante litem notice. (The trial court also denied Leonard's cross-motion for summary judgment.) This appeal followed.

2. *Substantial compliance.*

(a) Leonard enumerates as error the trial court's grant of summary judgment to the County and denial of summary judgment to him. Although this enumeration

4

contains certain surplus language, it is sufficient for us to consider both his substantial compliance argument and his tolling argument on appeal. See *Felix v. State*, 271 Ga. 534, 539-540 (523 SE2d 1) (1999).

(b) The trial court did not err in ruling that Leonard failed to substantially comply with OCGA § 36-11-1, which pertinently requires that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred[.]" Leonard bore the burden of proving substantial compliance with OCGA § 36-11-1. See *Dept. of Corrections v. Grady Mem. Hosp. Corp.*, 333 Ga. App. 315, 317 (2) (775 SE2d 773) (2015); *Coweta County v. Cooper*, 318 Ga. App. 41, 42 (733 SE2d 348) (2012); *Barngrover*, 250 Ga. App. at 596 (4). This, he failed to do.

Leonard sent a purported ante litem notice to a "private law firm hired by the County to represent the County as outside legal counsel." See *Coweta County*, 318 Ga. App. at 43. Here, the outside county attorney's affidavit confirmed that, as in *Coweta County*, he was not authorized by the County to accept service of ante litem notices on behalf of the County. See id. at 42. Despite the dissent's characterization of the attorney's affidavit as "carefully worded" and "self-serving," these criticisms do not mandate that the affidavit may not be considered in support of the County's

motion for summary judgment, particularly since Leonard failed to present facts to satisfy its burden to show timely ante litem notice. See generally *Coweta County*, 318 Ga. App. at 42. The dissent's apparent concern with the filing of the outside county attorney's affidavit after the denial of the County's first motion for summary judgment is also of no moment. See *T. L. Rogers Oil Co. v. South Carolina Nat. Bank*, 203 Ga. App. 605, 606 (2) (417 SE2d 336) (1992) ("The previous denial of summary judgment does not preclude a subsequent granting thereof on the basis of an expanded record.").

Prior negotiations between Leonard's counsel and the county attorney did not authorize the attorney to accept service of the ante litem notice. OCGA § 36-11-1 is not satisfied when a party sends a purported ante litem notice to a county's insurer or there are verbal discussions concerning the notice. See *Dept. of Corrections*, 333 Ga. App. at 317 (2); *Cobb v. Bd. of Commrs. of Roads & Revenue of Tift County*, 151 Ga. App. 472, 473 (2) (260 SE2d 496) (1979); *Doyal v. Dept. of Transp.*, 142 Ga. App. 79, 80 (234 SE2d 858) (1977). Even when viewed in a light most favorable to Leonard, the evidence reveals only that he sent a purported ante litem notice to a "private law firm hired by the County to represent the County as outside legal counsel." *Coweta County*, 318 Ga. App. at 43. Because this case is controlled by

6

*Coweta County*, the trial court did not err in granting the County's motion for summary judgment due to Leonard's failure to properly serve the County with an ante litem notice. It follows that the trial court's judgment should be affirmed.

3. *Tolling.*

Furthermore, the trial court correctly rejected Leonard's alternative argument that the ante litem notice period was tolled by an alleged incapacity that was not resolved until his executrix was appointed following his death. OCGA § 36-11-1 states that "[a]ll claims against counties must be presented within 12 months after they accrue or become payable or the same are barred. . . ." However, "[t]he ante litem notice statute, like a statute of limitation, may be tolled." *Carter v. Glenn*, 243 Ga. App. 544, 548 (2) (533 SE2d 109) (2000). See also OCGA § 36-11-1 ("persons laboring under disabilities shall be allowed 12 months after the removal of the disability to present their claims"); *Jacobs v. Littleton*, 241 Ga. App. 403, 406 (3) (b) (525 SE2d 433) (1999). To that end, OCGA § 9-3-90 provides, in pertinent part, that

> [i[ndividuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons.

See also OCGA § 36-11-1.

7

While a plaintiff need not be so mentally incompetent that he should be confined, or require a guardian, he must be so mentally incompetent (non compos mentis or insane), so unsound in mind, or so imbecile in intellect, that he could not manage his ordinary affairs of life. The test to be applied is whether the one claiming the disability has such unsoundness of mind or imbecility as to incapacitate one from managing the ordinary business of life.

*Carter*, 243 Ga. App. at 548-549 (2) (citing *Jacobs*, 241 Ga. App. at 406) (citations and punctuation omitted). Such a determination "may be made by the trial court as a matter of law, and the burden is on the plaintiff to prove incapacity." Id.

In support of his argument, Leonard presented the affidavit of Dr. Stanford Voegele, who discussed his evaluation and treatment of Leonard during a time period that preceded Leonard's accident. Voegele noted that Leonard suffered a stroke in January 2009 and that an MRI and CT scans in February 2009, May 2010, and October 2010 showed degeneration of the white matter in Leonard's brain. Voegele testified that the degeneration was a sign of "worsening dementia." Voegele also noted that Leonard's daughters complained of Leonard's worsening dementia and loss of memory during a September 2009 office visit. As a result of the stroke "and presenting in [Voegele's] office on multiple occasions in 2009 and 2010 with loss of memory and mood changes (agitation) around [Leonard's] family," Voegele

diagnosed Leonard with Alzheimer's disease in September 2009, December 2010, and March 2011. Ultimately, Voegele opined that by September 2, 2009, Leonard was "so weak of mind that he was incapable of understanding and acting with discretion in the ordinary affairs of his life." Voegele added that, "as of September 2, 2009 and at all times thereafter, [Leonard] was not of sound mind and was not mentally competent to handle his personal, business, health, legal and financial affairs." Although Voegele's affidavit describes Leonard's condition as progressive, Voegele does not reveal any further discussion or treatment of Leonard's condition after September 21, 2011.

Against this backdrop, the trial court specifically cited evidence of Leonard's mental condition *after* the January 30, 2012, accident: the medical narrative of Dr. James Lashley and Leonard's exercise of his legal rights. The trial court noted that Lashley initially met Leonard on February 1, 2012 (two days following Leonard's injuries) and treated him on multiple occasions thereafter, including performing surgery to repair Leonard's legs. Lashley last saw Leonard in September 2012. In the interim, Lashley noted that Leonard appeared for each scheduled visit and that he had been working with his caregivers to complete physical therapy as required. Absent from Lashley's report was any notation that Leonard did not understand his treatment

9

plan; that he appeared agitated, confused, or suffered memory loss; or that he was unable to make decisions concerning his health care.

The trial court found that Leonard was able to pursue his legal remedies. For example, Leonard was able to retain counsel, send a purported ante litem notice, engage the County's insurer, make a settlement offer, and file a civil action against the County. Moreover, Leonard asserted that, before the accident, he was able to live at home, perform personal functions, and that his health "was good for a man of his age." Based upon this evidence, the trial court concluded that Leonard's "mental incapacity did not prevent him from sending ante litem notice within the limitation[] period."

Under these circumstances, we discern no error in the trial court's conclusion. First, it is particularly telling that, despite current claims of Leonard's incapacity, no relative of Leonard's petitioned the probate court to appoint a guardian for Leonard to pursue any legal rights or otherwise manage his affairs. See *Pivic v. Pittard*, 258 Ga. App. 675, 677 (575 SE2d 4) (2002). Second, Leonard's ability to monitor his health, appear for medical appointments, and participate in physical therapy as ordered by his doctor point to Leonard's capacity following the accident. See generally *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452,

10

460-461 (d) (504 SE2d 514) (1998) (mental capacity to admit self to hospital). Finally, a party's ability to participate in litigation and to otherwise manage legal affairs, including the hiring of counsel and the pursuit of a settlement agreement, demonstrates mental capacity and will not toll a limitation period. See *Hayes*, 197 Ga. App. at 564 (5); *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 599 (3) (327 SE2d 736) (1985).

Because Leonard was not laboring under a disability that would toll the time for filing an ante litem notice, the trial court did not err in granting summary judgment to the County on the ground that the ante litem notice was untimely.

*Judgment affirmed. Branch, J., concurs; Andrews, P. J., concurs in Divisions 1, 2(b) and 3, and in the judgment only in Division 2(a); Ellington, P. J., and Dillard, J., concur in the judgment only; Barnes, P. J., and Miller, P. J., dissent.*

A15A1802.  IN RE: THE ESTATE OF JOE LEONARD, JR..

MILLER, Presiding Judge, dissenting.

I respectfully dissent to the majority's opinion because I would conclude that Leonard complied with the statutory requirements for presentment of his ante litem notice and that Smalley, in fact, had apparent authority to accept the notice.

The purpose of presenting a claim to the County prior to filing suit is to give the County an opportunity to investigate the claim, determine the evidence, and avoid unnecessary litigation. See *Burton v. DeKalb County*, 202 Ga. App. 676, 678 (415 SE2d 647) (1992). Importantly, OCGA § 36-11-1 does not specify to whom the claim must be presented. See id; compare OCGA § 36-33-5 (requiring claims against municipal corporations to be presented to the municipal corporation's "governing authority").

In this case, Leonard sent a timely formal written ante litem notice of his claim to Smalley, who admittedly was the designated County Attorney for Whitfield County at all material times with regard to this case. Smalley accepted the notice and discussed Leonard's claim with the County commissioners. Leonard subsequently filed and served his complaint on Smalley, who acknowledged service of the summons and complaint on Whitfield County's behalf. When the County answered the complaint it did not raise insufficient service of process as a defense, even though service of a complaint upon a county *must be made upon* a majority of the commissioners, the chairman of the board of commissioners or an *authorized agent*. See *Burton*, supra, 202 Ga. App. at 677-678.

The majority focuses on Smalley's carefully worded affidavit in which he stated that the County took no *formal action* to authorize him to accept ante litem notices on the County's behalf. Importantly, Smalley's sworn affidavit conveniently stopped short of stating that he had *no authority* to accept ante litem notices. Rather, the fact that Smalley acknowledged service of the complaint on behalf of the County shows that he had apparent authority to act as the County's agent with regard to Leonard's claim. See *Burton*, supra, 202 Ga. App. at 677-678 (service of a complaint upon a county may be made on the county's authorized agent). Consequently, this

case is distinguishable on its facts from the decision in *Coweta County*, supra, 318 Ga. App. at 43, in which there was *no evidence* that the law firm in question was authorized to act as the County's agent for the purpose of accepting ante litem notices.

Unlike the majority, I would not read the decision in *Coweta County* so narrowly as to hold that a designated county attorney from an outside law firm has no apparent authority under any circumstances. Under any circumstances, it is patently unreasonable for a designated county attorney to act in this manner, i.e., to acknowledge timely service of a complaint against a county, discuss the claim with the County, and wait until after expiration of the 12-month ante litem notice period to deny his authority to accept such notice. Moreover, the judicial system in this State is above this type of gamesmanship.

This interpretation is consistent with the purpose of the presentment requirement of OCGA § 36-11-1, and is, in fact, what happened in this case. The County clearly had an opportunity to investigate Leonard's claim, to determine the evidence and to avoid unnecessary litigation in this case. See *Burton*, supra, 202 Ga. App. at 678,

Viewing the evidence in the light most favorable to Leonard, as this Court must, I would find that Smalley had apparent authority to act as the County's agent for the purpose of accepting Leonard's ante litem notice and, therefore, I would find that Leonard complied with the presentment requirement of OCGA § 36-11-1.

I am authorized to state that Presiding Judge Barnes concurs in this dissent.